UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES JOHNSON,

Petitioner,

v.

JOHN PRELESNIK,

Respondent.[1]
_________________________/

CASE NO. 2:08-CV-13741
CHIEF JUDGE GERALD E. ROSEN
MAGISTRATE JUDGE PAUL J. KOMIVES

**REPORT AND RECOMMENDATION**

I. RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner a certificate of appealability.

II. REPORT:

A. *Procedural History*

1. Petitioner James Earl Johnson is a state prisoner, currently confined at the Handlon Correctional Facility in Ionia, Michigan.

2. On November 1, 2005, petitioner was convicted of second-degree murder, MICH. COMP. LAWS § 750.317, pursuant to his no-contest plea in the Wayne County Circuit Court. On November 22, 2005, he was sentenced to a term of 27½ -55½ years' imprisonment in accordance with the plea agreement, which reduced the charge from first-degree murder.

3. Petitioner sought leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claim:

> THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE MOTION TO WITHDRAW THE PLEA.

[1] By Order entered this date, John Prelesnik has been substituted in place of Blaine Lafler as the proper respondent in this action.

The court of appeals found no merit to petitioner's claims, and denied his delayed application for leave to appeal for lack of merit in the grounds presented. *See People v. Johnson*, No. 277628 (Mich. Ct. App. June 21, 2007).

4. Petitioner then sought leave to appeal this issue to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Johnson*, 480 Mich. 924, 740 N.W.2d 277 (2007).

5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 29, 2008. As grounds for the writ of habeas corpus, he raises the following variation to his earlier claim in the state courts:

> THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED PETITIONER'S MOTION TO WITHDRAW THE GUILTY PLEA WHICH VIOLATED PETITIONER'S DUE PROCESS RIGHTS UNDER THE UNITED STATES CONSTITUTION, AMENDMENT XIV; CONST 1963, ART 1, SEC 20.

This version of petitioner's claim that added the due process violation was not brought through the state court system.

6. Respondent filed his answer on April 6, 2009. He contends that petitioner's claim is without merit.

B. *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was summarized in the brief filed by the defendant-appellant to the Michigan Court of Appeals:

> Defendant pled no contest to Second Degree Murder on November 1, 2005. MCLA 750.317, MSA 28.549. A preliminary examination was held in the 36th District Court. The Prosecution originally charged James Johnson with Felony Murder (asserting that the death occurred in the course of a sexual assault) and First Degree Murder. The testimony at the District Court indicated that Tashona Holmes, a 20 month-old child, died on January 8, 2005 while in the care of James Johnson. Generally, the child was being cared for by her maternal

grandmother, Tanitihia Cook. The child's mother's whereabouts were unknown. James Johnson is not the father of the child but had dated the mother a couple of years earlier.

The Medical Examiner testified that she counted 66 bruises and 15 abrasions on the child. There were 39 bruises on the child's head and face. The injuries occurred within the 24-hour period before her death. There was bruising around the abdomen, stomach, and esophagus. There was also bruising on the right side of her body. The Examiner stated that there were two major injuries that caused internal bleeding, a lacerated liver and a closed head injury. The EMT unit advised her that the child had begun rigormortis [sic] and was cool when they reached her indicating that the child died a few hours before EMS arrived, at 11:50 P.M. The injuries were inflicted within six hours before the time of death. The Examiner testified that the liver injury was extremely painful. A closed head injury would have cause [sic] a person to suffer a headache, nausea, and lethargy. The Examiner testified that the child's injuries were not consistent with a fall because there were too many injuries over too many surfaces. There were 12 impact sides on the head. The injury to the child's lower back was consistent with the child being hit hard. There were no vaginal or anal injuries. The Examiner stated that she believed that both major injuries contributed to the child's death from blood loss. A fall could have caused the liver laceration. (TR [Preliminary Exam Transcript] 3/3/05, 8-59).

The child's mother, Shatona Holmes, testified that James Johnson called her on January 10, 2005 and threatened to do [to] her like he "had done her baby" because she had identified him to the police. (Id, 59-73).

Tanithia Cook testified that she was the maternal grandmother [of the child]. She dropped off the child along with her young sons, 10 and 11, at Mr. Johnson's house. She was close to the Johnson family. There were 13 children and five adults at the Johnson house at one point. She saw the child around six or seven in the evening and she seemed fine. She was called back to the house between 8 and 9 P.M. because her two boys were fighting. She did not see the child or Mr. Johnson at that time. She received a phone call around 10 P.M. stating that she needed to return to Mr. Johnson's house. The child was cold and 911 was called. There were handprints on the child's face and marks on her head. Mr. Johnson's mother, Carmella, performed CPR on the child. EMS also tried to save the child. (Id, 74-100).

Carmella Johnson testified that she was the mother of James Johnson. Mr. Johnson was at the house between 6 and 10 P.M. She came home between 7 and 9 P.M. and Mr. Johnson told her that the child was at the home. The child was not breathing when she went to see her around 9 P.M. She noticed small marks on the child's face. Ms. Johnson performed CPR on the child. (Id, 101-116).

Carmella Johnson, Jr. testified that she was at the house the whole day. The child had been at the house since Christmas. The child seemed healthy, but kept crying. She was in the living room around 7 P.M. The boys, Junior and Juan, were wrestling and fell on the child. The child did not wake up when the boys fell on her. Mr. Johnson took her into his bedroom around 9 P.M. Mr. Johnson kept coming out of his room to ask for diapers. (Id, 116-128).

> Officer Kurtis Staples testified that he interviewed James Johnson after giving him his Miranda Rights. Mr. Johnson advised the police that he had trouble reading and writing. Mr. Johnson told the police that he came home around 5 or 6 P.M. The little girl was crying. He took the child to his room and gave her some milk. He then fell asleep. The child would not wake up. He tried to give the child CPR by pumping on her chest. He left the house with a couple of friends thinking that the child would be alright [sic] in his mother's care. He thought of the little girl like a daughter. He told the Officer that if he did kill the baby that he did not mean to and that he was drunk. Mr. Johnson indicated that he had tripped and the child hit her head on the railing of the bed. Mr. Johnson admitted hitting the child on the back to stop her from crying. Trial counsel moved to withdraw, stating that there had been a breakdown in the attorney-client relationship and that he was unable to visit with Mr. Johnson at the jail, as he should have. The trial court granted the motion but told James Johnson that he would have to represent himself. (TR 6/20/05). The trial court subsequently appointed trial counsel who filed a Motion to Suppress statements made to the police. The motion was denied after an evidentiary hearing on August 11, 2005. (Id, 128-153).
>
> The plea was pursuant to a Plea Agreement wherein the Prosecution reduced the charge from First Degree Murder and the parties agreed to a sentence of 27½ to 55½ years. The Investigator's Report was used to supply the factual basis. The report indicated that a one year old child died while in the care of Mr. Johnson. The child had numerous bruises. Mr. Johnson told the police that he fell while carrying the child. (TR 11/1/05, 17-18). The trial court sentenced Mr. Johnson pursuant to the parties' agreement on November 22, 2005. (TR 11/22/05).

Def.-Appellant's Br. On App., in *People v. Johnson*, No. 277453 (Mich. Ct. App.) at 6-9.

At the plea hearing, petitioner pled no contest to second-degree murder. At that time, petitioner asserted that he understood the maximum potential sentence for that charge and that he was giving up his constitutional rights to a jury, the presumption of innocence until proven guilty, the opportunity to confront and question witnesses, the right to compel witnesses to testify and the chance to testify at his own trial. Petitioner also accepted that he no longer had the right to remain silent and not have his silence used against him, that he would not be able to claim the plea was the result of undisclosed promises or threats, and that he would be unable to automatically appeal the decision. Based on petitioner's assent to the posed questions, the court

found that petitioner's plea was entered knowingly, voluntarily, understandingly, and intelligently. The trial court deemed the plea to be acceptable. (Plea Hearing 1/17/06, 14-16, 18)

C. *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also, Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing

legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); see also, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); see also, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early, 537 U.S. at 8; see also, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness

of the state court's resolution of an issue. See *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D. *Validity of Plea*

1. *Clearly Established Law*

A guilty plea is valid if it is entered voluntarily and intelligently as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. In connection with knowledge of the direct consequences of a particular plea, the defendant must be aware of the maximum sentence that can be imposed for the specific crime to which he or she is pleading guilty. *King*, 17 F. 3d at 154. If a defendant is aware of the consequences of a plea and decides to enter it, his solemn declaration of guilt carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).

Generally, when a federal habeas petition is brought to challenge a guilty plea, the state's reasoning related to the refusal of allowing a plea withdrawal is accorded a presumption of correctness. As such, a petitioner must overcome a heavy burden if the federal court is to

overturn the findings by the state court that restricted the withdrawal of a submitted guilty plea. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

2. Analysis

Petitioner contends that his plea was involuntary because it was obtained based on his statement to the police, which was involuntary. Petitioner bases his allegation on his illiteracy, which he claims hindered his ability to actually comprehend what the police were telling him about his constitutional rights prior to the entry of his plea. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Statements or confessions are inadmissible when they have been induced by lies, deception, and other false promises. *See United States v. Murphy*, 329 F.2d 68 (2nd Cir. 1964) *see also, People v. McCullough* 81 Mich. 25 (1890). The decision of the Supreme Court in *Miranda v. Arizona*, went further, stating that "any evidence that the accused was threatened, tricked, or cajoled into a waiver of rights will, of course, show that the defendant did not voluntarily waive his privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436 (1966). While this court may assume that where there was such fraud or even trickery that petitioner's plea would be deemed invalid, petitioner has failed to set forth specific evidence that there was some form of deception or trickery that would negate his voluntary waiver of self-incrimination. In addition, the police officer who questioned petitioner indicated that he had knowledge of petitioner's near illiteracy. Petitioner was also properly Mirandized at the time of his arrest, which shows that he was at least aware of these rights. There was some disagreement at the plea hearing as to whether petitioner had requested a lawyer during questioning. However, the court ultimately made a determination that petitioner had never requested an attorney and that the prosecution had met its burden of showing by a preponderance of the evidence that petitioner

had voluntarily waived his *Miranda* rights and that his plea was being made knowingly and intelligently. This determination carries a presumption of correctness and petitioner has not met the burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C.A § 2254(e)(1).

With respect to the plea itself, petitioner points to his illiteracy as evidence that he did not understand the proceedings. However, the record has not established a level of such incomprehension of the gravity and permanence of his guilty plea to render it involuntary. At the plea hearing, petitioner indicated that he understood that by entering a guilty plea he would be giving up his right to challenge the process by which he was arrested. In addition, such statements "carry a strong presumption of verity" when made in open court. *Blackledge,* 431 U.S. at 74. Because of the importance placed on such statements, the courts have placed a heavy burden on a defendant to rebut the presumption that a guilty plea is valid. *Myers v. Straub*, 159 F. Supp. 2d 621, 626 (E.D. Mich. 2001) (Steeh, J.). The plea transcript establishes that petitioner understood the proceedings and responded appropriately to the trial court's inquiries. (Plea Hearing, 14-16, 18). Thus, his alleged illiteracy does not render the plea involuntary. *See Jones v. United States*, No. 7:05-CV00299, 2006 WL 44323, at *3-*4 (W.D. Va Jan. 9, 2006); *Harrison v. McCall*, No. 0:08-3364, 2009 WL 2901628, at *3 (D.S.C. Sept. 10, 2009).

Additionally, once a criminal defendant has admitted in court that he is guilty, he may not raise independent claims that relate to the deprivation of constitutional rights that occurred before the entry of the guilty plea. It is true that a defendant may attack the voluntary and intelligent character of the guilty plea by arguing that advice received from counsel was not within constitutional standards. *Tollett v. Henderson* 411 U.S. 258, 267 (1973). However, petitioner has argued only that his plea was not entered knowingly based on his illiteracy. He

makes no complaint with regards to the performance of counsel. Since petitioner does not claim that his counsel did not properly advise him of the consequences of the plea agreement, petitioner is barred from raising any claim related to the deprivation of constitutional rights, further undermining his request for habeas corpus relief.

The Sixth Circuit Court of Appeals in *Everard v. United States* explained that, "the mere assertion of innocence, absent a substantial supporting record is insufficient to overturn a guilty plea, even on direct appeal." *Everard v. United States* 102 F.3d 763, 766 (6th Cir. 1996) (quoting *United States v. Ludwig*, 972 F.2d 948, 952 (8th Cir. 1992)). Here the petitioner merely asserts that there were other people in the house who could have harmed the child. This is not enough to constitute a substantial supporting record that he is entitled to withdraw his guilty plea. By simply saying there were other possibilities for the injuries to the child is not in itself a clear declaration of innocence. Once a plea has been entered, there must be substantial evidence that establishes innocence, not just the possibility of innocence. Petitioner has not provided this substantial evidence.

Moreover, petitioner's assertion of innocence after the plea was entered does not render involuntary his otherwise valid plea. In *Hanson v. Mathews*, a district court judge in the Eastern District of Wisconsin observed that there are "no cases which hold that denial of guilt, under oath, subsequent to the entry of a guilty plea but prior to sentencing renders the plea involuntary as a matter of constitutional law." *Hanson v. Mathews*, 296 F. Supp. 1328, 1331 (E.D. Wis 1969), *aff'd*, 424 F.2d 1205 (7th Cir. 1970). It is also well established that "factual guilt or innocence … is irrelevant to the question of whether [a defendant's] plea was voluntary." *United States ex rel. Smith v. Johnson*, 403 F. Supp. 1381, 1397 n.28 (E.D. Pa. 1975), *aff'd*, 538 F. 2d 322 (3rd Cir. 1976); *see also, Stewart v. Peters*, 958 F.2d 1379, 1385 (7th Cir. 1992) ("A guilty

plea is no more involuntary because the defendant believes he is innocent than the settlement of a civil lawsuit is involuntary because the defendant refuses to admit liability and may believe in all sincerity that he is not liable in the least."). In fact, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970). "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979) (footnotes omitted).

Petitioner is also unable to show a denial of his constitutional rights by the trial court's failure to allow him to withdraw his plea. Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea. *See Chene v. Abramajtys*, No. 95-1491 WL 34902, at *2 (6th Cir. Jan. 29, 1996); *Metcalf v. Bock*, No. 00-10361-BC, 2002 WL 31749157, at *5 (E.D. Mich. Dec. 5, 2002) (Lawson, J.); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D.N.Y. 1978), *aff'd*, 591 F.2d 169 (2nd Cir. 1979). Thus, the trial court's failure to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief.

Further, even under the standard applicable to pleas in federal court under FED. R. CRIM. P. 11, petitioner cannot show that he would be entitled to withdrawal of his plea. Under this standard, a claim of innocence alone does not entitle a defendant to withdraw his plea; rather,

withdrawal is permitted only in the "most compelling of circumstances indicating the innocence of the defendant." *United States v. Tolson*, 372 F. Supp. 2d 1, 24 (D.D.C. 2005), *aff'd*, 264 Fed. Appx. 2 (D.C. Cir. Jan. 25, 2008); *see also*, *United States v. Robinson*, 498 F. Supp. 2d 328, 331-32 (D.D.C. 2007). To be entitled to withdrawal, a "defendant must come forward with some evidentiary support for his innocence. "*United States v. Abdelhadi*, 327 F. supp. 2d 587, 595 (E.D. Va. 2004); *see also*, *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001). Here petitioner does not have evidentiary support for his claim of innocence beyond the presumed presence of others in the house who could have harmed the child. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E. *Recommendation Regarding Certificate of Appealability*

1. *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); accord *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have

concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); accord *Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); see id., advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2. *Analysis*

If the Court accepts this recommendation regarding the merits of petitioner's claims, the Court should conclude that petitioner is not entitled to a certificate of appealability. Petitioner

was unable to show that he did not enter his plea knowingly and voluntarily. Beyond this, petitioner has not presented evidence sufficient to meet his burden for overturning an already entered guilty plea and the conclusion that his plea was voluntary and valid is not reasonably debatable. Further, it is clear under established Supreme Court precedent that petitioner's plea withdrawal claim is not cognizable on habeas review, and thus the resolution of these claims is not reasonably debatable. Accordingly the Court should conclude that petitioner is not entitled to a certificate of appealability.

F. *Conclusion*

In view of the foregoing reasons, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.

1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:6/23/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on June 23, 2010.

s/Eddrey Butts
Case Manager